```
             UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    EASTERN DIVISION
```

ROGER L. COOLEY,                                                    PLAINTIFF

V.                                                  CIVIL ACTION NO. 2:20-CV-46-RPM

COMMISSIONER OF
SOCIAL SECURITY,                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

### I.      Introduction

On March 9, 2020, plaintiff Roger L. Cooley ("Cooley") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the defendant Commissioner of Social Security ("Commissioner") of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") as well as denial of his claim for supplemental security income ("SSI") under Title XVI of the SSA. Doc. [1].

Cooley is a 6'1", 287-pound man, who was 38 years old at the time that he filed for DIB and SSI. Doc. [9], at 23. He lives with his parents and has a 10th-grade education. *Id.*, at 125, 293. He has previously worked as a coil tester, roustabout, pellet mill operator, and truck unloader. *Id.*, at 275, 302, 313. Cooley contends that he is disabled because he suffers from several impairments, including but not limited to diabetes mellitus ("diabetes"), degenerative lumbar disc disease ("DLD"), "personality disorder," peripheral neuropathy, sciatica, and obesity. *Id.*, at 23.

### II.     Procedural History

On October 31, 2017, Cooley filed for DIB and SSI on the basis of back disorders and affective/mood disorders. *See, e.g.*, Doc. [9], at 251–52. Cooley's applications were consolidated

1

by the Social Security Administration ("Administration"), which denied his application initially and upon reconsideration. *Id.*, at 169–200. Thereafter, he requested a hearing before an Administrative Law Judge ("ALJ"). *Id.*, at 225–26. On January 28, 2019, Cooley had a video hearing in front of an ALJ. *Id.*, at 95–134. On May 3, 2019, the ALJ ruled that Cooley was neither entitled to DIB nor SSI. *Id.*, at 20–31. Thereafter, Cooley filed a timely appeal to the Appeals Counsel ("AC"), which denied his request for review, and the appeal, on January 10, 2020. *Id.*, at 6–9. This action followed. Doc. [1].

### III. Relevant Facts

#### A. Medical Records

The objective medical evidence of record included medical records from Cooley's treating physicians, including Aremmia Tanious, MD ("Dr. Tanious"), Doc. [9], at 358–71, 463–76; Terry Meadows, MD ("Dr. Meadows"), *id.*, at 382–458; and Stuart Samson, MD, ("Dr. Samson"), *id.*, at 372–81. Dr. Tanious is a neurologist. Doc. [9], at 358–71, 463–76. After ordering an MRI and nerve conduction study for Cooley, Dr. Tanious diagnosed him with significant cervical spinal spondylosis with disc protrusion, possible cervical myelomalacia, DLD with L4–L5 disc protrusion, diffuse myofascial pain, small fiber neuropathy, and mild bilateral carpel tunnel syndrome ("mild bilateral CTS"). *Id.*, at 362–63, 464. Likewise, Dr. Tanious noted that Cooley had "multiple tender points on [his] trunk and all extremities" and frequently complained of "severe pain." *Id.*, at 361, 364, 463. Nevertheless, Dr. Tanious' other findings were largely normal. *Ibid.* Insofar as treatment was concerned, Dr. Tanious prescribed Cooley with an opioid, Norco, to take three times per day or as needed for "severe pain" on a continual basis as well as several other drugs. *See id.*, at 362, 365.

Furthermore, Dr. Meadows handled Cooley's general care and oversaw his ongoing treatment for several chronic conditions. Doc. [9], at 426. For example, Dr. Meadows monitored Cooley's diabetes and prescribed several medications, including for Cooley's cholesterol and diabetes. *See*, *e.g.*, *id.*, at 410, 421, 423, 428. During these visits, Cooley frequently complained of chronic back pain. *See*, *e.g.*, *id.*, at 406, 414, 416.

Finally, Cooley saw Dr. Samson for treatment of his depression. Doc. [9], at 372–81. During his two visits, Cooley mainly received counseling from Dr. Samson. *Id.*, at 372–81. In light of his limited funds, however, Cooley could not see Dr. Samson more often. *Id.*, at 375. Cf. *Id.*, at 121.

## B. Medical Opinions

### i. Dr. Tanious

On January 1, 2019, Dr. Tanious provided a "medical opinion," 20 C.F.R. § 404.1513(a)(2), about Cooley, Doc. [9], at 459–61.[1] According to Dr. Tanious, Cooley was capable of (i) standing/walking for less than one hour during an 8-hour workday and, at most, 15 minutes without a break; (ii) sitting for one hour without interruption; (iii) occasionally climbing, "balanc[ing]," and stooping; and (iv) unlimited hearing, speaking, and feeling. *Ibid.* Dr. Tanious also identified that Cooley suffered from: (i) impaired reaching, handling, pushing, and pulling; (ii) an inability to crouch, kneel, and crawl; (iii) environmental limitations insofar as he cannot work around humidity, fumes, heights, extreme temperatures, vibrations, and moving machinery; (iv) will have "good days" and "bad days;" and (v) will likely need to be absent from work for more than four days per month. *Ibid.*

---

[1] Dr. Tanious provided an earlier opinion, too. However, the earlier opinion did not meet the regulatory definition of a medical opinion, 20 C.F.R. § 404.1513(a)(2), and addressed an issue reserved for the Commissioner, Doc. [9], at 28, 358.

3

During Cooley's hearing, the Vocational Expert ("VE") was given several hypotheticals by the ALJ and Cooley's counsel. Doc. [9], at 95, 97, 125–32, 351–53. In one hypothetical put forth by Cooley's counsel, the VE addressed whether Cooley could perform any job in the national economy if he could neither stand for more than two hours nor sit for more than three hours per day. *Id.*, at 132. While this additional limitation hypothetical was less restrictive than the restriction in Dr. Tanious' medical opinion, the VE concluded that Cooley would be unable to perform any job existing in the national economy with that restriction. *Id.*, at 132, 459–61.

### ii.   William Hand, MD

On December 14, 2017, non-examining, non-treating physician William Hand, MD ("Dr. Hand") reviewed the available medical records and formed his own medical opinion. Doc. [9], at 161–76; 20 C.F.R. § 404.1513(a)(2). Dr. Hand first opined that Cooley had one medically determinable impairment, "disorders of the back," which he deemed not to be "severe." *Id.*, at 173. He also concluded that Cooley had exertional limits and his described symptoms, which included pain, loss of sensation, and weakness, were grounded in objective medical evidence. *Id.*, at 173–74. Thereafter, he opined Cooley was able to (i) occasionally lift 20 pounds and frequently lift 10 pounds; (ii) occasionally stoop and crawl; (iii) stand and/or walk around for about 6 hours of an 8-hour workday; and (iv) sit for about 6 hours of an 8-hour workday. *Id.*, at 174. However, Cooley was not limited in pushing, pulling, kneeling, or climbing ramps and stairs. *Ibid.* Ultimately, Dr. Hand opined that Cooley was capable of "light work" and, thus, "not disabled." *Id.*, at 176.

### iii.   Karen Hulett, MD

After Cooley sought reconsideration of his claims, on December 28, 2017, Karen Hulett, MD ("Dr. Hulett") reviewed the available medical records and formed her own medical opinion. Doc. [9], at 67–84; [10], at 4; [16], at 9; 20 C.F.R. § 404.1513(a)(2). Dr. Hulett determined that he had

two medically determinable impairments, including "depression, bipolar and related disorders" and "disorders of the back." *Id.*, at 184. She deemed his mental impairments not to be "severe." *Ibid.* However, she concluded that his physical impairment was severe. *Ibid.* After considering Cooley's above-mentioned symptoms, she concluded that the symptoms were grounded in objective medical evidence. *Id.*, at 185–87. Ultimately, Dr. Hulett concluded that Cooley was not limited to unskilled labor, was capable of "light" work, and "not disabled." *Id.*, at 186.

### iv. Seth Brown, DO

A consulting physician, Seth Brown, D.O. ("Dr. Brown"), was appointed to examine Cooley. Doc. [9], at 431–38. After examining Cooley, Dr. Brown determined that he had five impairments, including degenerative cervical disease, DLD, hypertension, diabetes, and depression. *Id.*, at 437. He further opined that Cooley was capable of: (i) sitting and standing normally during an 8-hour workday; (ii) occasionally bending, stooping, crouching, squatting, reaching, handling, feeling, grasping, fingering, "and so on;" and (iii) suffered from no relevant visual, communicative, or workplace environmental limitations. *Ibid.* However, Dr. Brown did describe two specific limitations: (i) Cooley had moderate walking limitations that required use of "an assistive device, such as a cane," for "short and long distances and uneven terrain" and (ii) there were mild limitations on the amount of weight that he could lift and carry due to degenerative joint disease. *Ibid.*

### C. Nonmedical Evidence

Finally, Cooley self-reported his symptoms and testified on his own behalf at an ALJ hearing. According to Cooley, in 2012, he developed severe pain in his left arm that eventually spread to his right arm and prevented him from working. Doc. [9], at 107. Furthermore, his diabetes has caused him to suffer from neuropathy in his feet. *Id.*, at 108. He cannot stand for more than 50

minutes without feeling like "1,000 bees [are] stinging" his feet. *Ibid.* When this happens, he needs to "get off" his feet for "pretty much" the rest of that day. *Id.*, at 109–10. Likewise, he can only: (i) walk a block and a half at most and (ii) get "a little" sleep when he takes pain medication. *Id.*, at 111, 118, 121. Overall, he feels unrelenting pain throughout his body that he describes as similar to constantly hitting his "funny bone." *Id.*, at 113–14, 305, 309.

Robert Cooley ("Mr. Cooley"), his father, submitted a third-party function report about Cooley. *See* Doc. [9], at 293–301. Mr. Cooley lives with Cooley and spends roughly four to five hours per day with him. *Id.*, at 293. According to Mr. Cooley, Cooley feeds the family pets, helps with cooking, and drives his mother to appointments. *Id.*, at 293–94. Nevertheless, his prescription medication makes him drowsy and absent-minded. *Id.*, at 295. For example, Cooley will forget to shave and take his medication. *Id.*, at 295, 298. Finally, Mr. Cooley opined that Cooley could not reach above his head, was only able to lift 20 pounds, and could only walk short distances. *Id.*, at 298–99.

## IV.   ALJ's Opinion

In his opinion, the ALJ made the following findings of fact. First, the ALJ concluded that Cooley has not engaged in substantial gainful activity since March 15, 2017. Doc. [9], at 23. The ALJ further found that Cooley suffered from several "severe" medical impairments: diabetes, obesity, hypertension, depression, personality disorder, mild bilateral CTS, peripheral neuropathy, cervical spondylosis, DDD, and complex regional pain syndrome. *Ibid.* Next, the ALJ concluded that Cooley did not suffer from a severe impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Ibid.* Then, the ALJ determined Cooley's residual functional capacity ("RFC"). *Id.*, at 25–29. In his RFC determination, the ALJ concluded that Cooley could (i) occasionally lift, carry, push, or

pull 10 pounds; (ii) sit, stand, and walk for up to 6 hours in an 8-hour work day but "require[s] the option to stand or walk for 30 minutes after every 30 minutes of sitting;" (iii) frequently, but not repetitively, operate hand controls; (iv) frequently handle, finger, and feel with his hands; (v) never climb ladders, ropes, or scaffolds, but occasionally climb ramps and stairs; (vi) occasionally stoop, kneel, and crawl; (vii) never work at unprotected heights or with moving mechanical parts; and (viii) was limited to performing simple, routine tasks as well as only occasionally interacting with the general public. *Ibid.* Thereafter, at step four, the ALJ concluded that Cooley could not return to his past relevant work. Doc. [9], at 29.

At step five, the ALJ found that Cooley was a "younger" individual, aged 15–44, because he was 38 years old when he filed for DIB and SSI. *Ibid*. Further, the ALJ found that Cooley has a limited education and can communicate in English. *Ibid.* Thereafter, the ALJ noted that job skill transferability was not material to determining disability because use of the VE rules as a framework supported a finding that Cooley is "not disabled," whether or not he has transferable job skills. *Id.*, at 29–30. Finally, the ALJ concluded that, considering Cooley's age, education, work experience, and RFC, he was capable of "light work" and performing jobs that exist in significant numbers in the national economy, including as a router, mail clerk, and order caller. *Id.*, at 30. Thus, the ALJ concluded that Cooley was not "disabled" under the SSA. *Ibid.*

## V. **Standard of Review**

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" *Biestek v. Berryhill*, ⎯⎯ U.S. ⎯⎯, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation omitted). It is "more than a mere scintilla and less than a preponderance.'" *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quotation omitted). Finally, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)).

## VI. Five-Step Process Generally

A claimant is "disabled" as defined in the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. The steps include: "(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271–72).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301–2 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified. *Id.* at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "A

finding at any step that the claimant is not disabled ends the inquiry." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

## VII. <u>Analysis</u>

### A. Did the ALJ err by failing to discuss 20 C.F.R. § 404.1520c(c)(3)–(5) in his written opinion?

First, Cooley argues that the ALJ failed to articulate how he considered 20 C.F.R. § 404.1520c(c)(3)–(5) in his written opinion. Doc. [10], at 10. In support of his position, Cooley argues that the ALJ was required, under 20 C.F.R. § 404.1520c(b)(3), to explain his consideration of 20 C.F.R. § 404.1520c(c)(3)–(5) in his written opinion because, in Cooley's view, the medical opinions of Dr. Brown and Dr. Tanious were "relatively speaking, in equipoise in terms of consistency and supportability in the record[.]" *Id.*, at 11. Since the ALJ failed to discuss these additional factors, Cooley concludes, this case must be remanded for further proceedings. *Id.*, at 11–12.

As always, the Court begins with the text of the regulation. In full, 20 C.F.R. § 404.1520c(b)(3) states:

> (b)(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we *find* that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

[20 C.F.R. § 404.1520c(b)(3) (emphasis added).]

Under a plain reading of the regulation, the ALJ must only expressly discuss 20 C.F.R. § 404.1520c(c)(3)–(5) if he "*finds*" that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this

9

section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same[.]" 20 C.F.R. § 404.1520c(b)(3). On its face, the 20 C.F.R. § 404.1520c(b)(3) writing requirement is only triggered when the ALJ himself *makes a finding* that two opinions are "equally well-supported" but "not exactly the same." 20 C.F.R. § 404.1520c(b)(3). This understanding is fully consistent with the Administration's statements about the regulatory provision. *See* Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017). In particular, the Administration explained that "a detailed rule for when th[e] situation [of equal medical opinions] may occur" is inappropriate because "the content of evidence . . . varies with each unique claim[.]" *Ibid.* Finally, the Court's view is consistent with other courts that have addressed this issue; these courts have also concluded that the ALJ's written finding that there is a "tie" between two medical opinions is what triggers express consideration of 20 C.F.R. § 404.1520c(c)(3)–(5). *See, e.g.*, *Governor v. Comm'r of Soc. Sec.*, No. CV 20–54–BAJ–EWD, 2021 WL 1151580, at *7 (M.D. La. Mar. 2, 2021), *adopted*, No. CV 20–00054–BAJ–EWD, 2021 WL 1151525 (M.D. La. Mar. 25, 2021). *See also Amber H. v. Saul*, No. 3:20–CV–490 (ATB), 2021 WL 2076219, at *5 (N.D.N.Y. May 24, 2021); *Lori P. v. Comm'r of Soc. Sec.*, No. 2:19-CV-00193, 2021 WL 1207456, at *5 (D. Vt. Mar. 31, 2021); *Creter v. Saul*, No. 1:20–CV–00840, 2021 WL 809323, at *13 (N.D. Ohio Mar. 3, 2021); *Healer v. Saul*, No. SA–19–CV–01497–ESC, 2020 WL 7074418, at *9 (W.D. Tex. Dec. 3, 2020).

Here, the ALJ did not find that two medical opinions were "equally well-supported" but "not exactly the same." 20 C.F.R. § 404.1520c(b)(3); Doc. [9], at 20–31. Therefore, he did not need to detail his consideration of 20 C.F.R. § 404.1520c(c)(3)–(5) in his written opinion. *See, e.g., Governor*, 2021 WL 1151580, at *7. This argument fails.

## B. Did the ALJ "Play Doctor?"

Next, Cooley argues that the ALJ "played doctor" because he, "in effect," rejected every medical opinion of record. Doc. [10], at 14. At the outset, Cooley correctly restates the law. *Ibid.* It is true that "when the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Simoneaux v. Comm'r of Soc. Sec.*, No. CV 18–270–RLB, 2019 WL 2269916, at *8 (M.D. La. May 28, 2019) (quoting *Garcia*, 2018 WL 1513688, at *2). Nevertheless, there is a distinction between reasonably departing from the exact strictures of a particular medical opinion and effectively rejecting that opinion. While an ALJ certainly cannot undertake a "drastic" departure from the medical opinions of record, *Kinan F. v. Saul*, No. 2:19–CV–88–Z–BR, 2020 WL 5930626, at *4 (N.D. Tex. June 19, 2020), *report and recommendation adopted*, No. 2:19–CV–88–Z–BR, 2020 WL 4188066 (N.D. Tex. July 21, 2020); *Billy B. v. Comm'r of Soc. Sec.*, No. 20–CV–0036–MWP, 2021 WL 3191882, at *6 (W.D.N.Y. July 28, 2021), the ALJ's RFC determination neither needs to "perfectly match" a particular medical opinion, *see, e.g.*, *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *Carmen P. v. Saul*, No. 19–CV–1557–L, 2021 WL 795312, at *2 (W.D.N.Y. Mar. 2, 2021), nor find the sole supporting medical opinion entirely persuasive, *Williams v. Berryhill*, No. 3:18-CV-1913-BH, 2019 WL 4393635, at *13–14 (N.D. Tex. Sept. 13, 2019); *Wycoff v. Berryhill*, No. 4:18–CV–885, 2019 WL 699995, at *4–5 (S.D. Tex. Feb. 19, 2019); *Kozlowski v. Colvin*, No. 4:13–CV–020–A, 2014 WL 948653, at *4–6 (N.D. Tex. Mar. 11, 2014). Indeed, if "perfect matching" was required, the ALJ's RFC determination would be largely limited to rubberstamping a particular medical opinion, not making a determination "'based upon 'all of the relevant evidence in the case record[.]'" *Pearson v. Comm'r of Soc. Sec.*, No. 1:20–CV–166–HSO–RPM, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted*, No. 1:20–CV–

00166–HSO–RPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021) (quoting *Gray v. Astrue*, No. 1:09–CV–0101–BI, 2011 WL 856941, at *5 (N.D. Tex. Mar. 11, 2011)).

Here, the ALJ found Dr. Brown's medical opinion to be persuasive, but not "entirely" so. Doc. [9], at 28. While this is the only opinion that the ALJ found to be even partially persuasive, this is not error within itself. *See, e.g.*, *Williams*, 2019 WL 4393635, at *13–14. Furthermore, the ALJ departed somewhat from Dr. Brown's medical opinion by adding certain additional limitations to his RFC determination, including that (i) Cooley requires the option to stand/walk for 30 minutes after every 30 minutes of sitting; (ii) he can never work at unprotected heights, around moving mechanical parts, or climb ladders, ropes, and scaffolds; and (iii) he was limited to performing simple, routine tasks and occasionally interacting with the general public. *Compare* Doc. [9], at 25, *with id.*, at 437. Self-evidently, the ALJ did not "drastically" depart from Dr. Brown's medical opinion. *See, e.g.*, *Kinan F.*, 2020 WL 5930626, at *4. Ultimately, what Cooley argues is the ALJ "playing doctor" is "actually the ALJ properly interpreting the medical evidence to determine his capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

### C. Did the ALJ err by failing to sufficiently "explain" the consistency and supportability of the "medical opinions" in the record?

Cooley argues that the ALJ failed to comply with 20 C.F.R. § 404.1520c(b)(2) because he did not sufficiently "explain" his decision, *inter alia*, rejecting Dr. Tanious' "medical opinion" in this case. *See* Doc. [10], at 14.

Since Cooley filed for SSI and DIB "on or after March 27, 2017," the ALJ was required to apply the new regulations. 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c. Through the new regulations, the Administration revised the standards and procedures for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 82 Fed.

12

Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c(a). As such, ALJs are "no longer required to give controlling weight" to the opinions of treating physicians. *See, e.g., Pearson*, 2021 WL 3708047, at *5 (quotation omitted). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. 20 C.F.R. § 404.1520c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) "other factors that tend to support or contradict" the opinion. 20 C.F.R. § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). In considering these factors, the ALJ is required to "explain how [h]e considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [Cooley's] determination or decision." *Id.* (emphasis added).

With respect to "supportability," "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 1:20–CV–00261–RAK–HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1)). The regulations provide that "consistency" is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2)).

Considering the newness of the regulations, there is a dearth of caselaw concerning what constitutes a sufficient "explanation" of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2). *See, e.g.*, *Moore v. Saul*, No. 3:20–CV–48–DPJ–MTP, 2021 WL 754833, at *3 n.1 (S.D. Miss. Feb. 26, 2021). In *Pearson*, this Court explained why an ALJ's persuasiveness discussion is critical to his analysis and that he must provide the Court with an "adequate discussion" of his reasons for finding a particular medical opinion to be persuasive or

unpersuasive. *Pearson*, 2021 WL 3708047, at *5. The measuring stick for an "adequate discussion" is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, *see*, *e.g.*, *id.*; *Ramirez v. Saul,* No. SA–20–CV–00457–ESC, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021); *Todd v. Comm'r of Soc. Sec.*, No. 3:20–CV–1374, 2021 WL 2535580, at *9 (N.D. Ohio June 3, 2021), *report and recommendation adopted*, No. 3:20–CV–1374, 2021 WL 2530846 (N.D. Ohio June 21, 2021); *Burba v. Comm'r of Soc. Sec.*, No. 1:19–CV–905, 2020 WL 5792621 (N.D. Ohio Sept. 29, 2020), and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof, *see*, *e.g.*, *Moore*, 2021 WL 754833, at *3; *Ramirez*, 2021 WL 2269473, at *6. "Stated differently, there must be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding. *Pearson*, 2021 WL 3708047, at *5 (citing *Ramirez*, 2021 WL 2269473, at *6). Furthermore, in *Pearson*, the Court implied that the level of specificity that 20 C.F.R. § 404.1520c(b)(2) demands is context driven. *Pearson*, 2021 WL 3708047, at *5–*6. In that case, the ALJ recited facts from the administrative record and then summarily concluded that the only two medical opinions supporting his position were persuasive. *Ibid.* The Court concluded that the medical opinions at issue were central to the ALJ's decision and his failure to provide any reasons whatsoever for finding them persuasive was reversible legal error. *Ibid.*

Here, the ALJ stated in relevant part:

> These opinions are not persuasive because they go to an issue reserved to the Commissioner, and they are not consistent with or supported by the overall evidence, including this doctor's own treatment records, which show generally unremarkable findings on physical exams.

> [Doc. [9], at 28.]

14

Thus, the ALJ's only specific discussion of Dr. Tanious' medical opinion was his brief statement that Dr. Tanious' "treatment records" showed "generally unremarkable findings on physical exams." *Ibid.*

Here, the ALJ's discussion of Dr. Tanious' medical opinion falls short of 20 C.F.R. § 404.1520c(b)(2)'s "explanation" demands. Dr. Tanious' medical records arising from his treatment of Cooley present a much more complex picture than is suggested by the ALJ's discussion. Doc. [9], at 359–71. On the one hand, Cooley's physical exams generally reveal that, for example, he had a normal range of motion; no cardiovascular, respiratory, ocular, gastrointestinal, or psychological abnormalities; and a generally pleasant demeanor. *Id.*, at 364, 463, 465, 468, 471. Nevertheless, Dr. Tanious also observed that Cooley was "positive for muscloskeletal pain," had tender points all over his body, complained of "severe pain," and suffered from, *inter alia*, neuropathy, degenerative diseases of the back, and myofascial pain. *Id.*, at 361, 363, 367, 463, 466, 469, 471–72. Indeed, Dr. Tanious also prescribed strong medication to Cooley, including opioids, in order to treat his conditions and control his ongoing pain. *Id.*, at 362, 365, 464, 467, 470, 475. Finally, Dr. Tanious' "abnormal" or, say, "remarkable" findings are intimately related to Cooley's grounds for seeking DIB and SSI in the first instance. *Id.*, at 104, 106–8, 274, 302–3, 324.

In light of the above, the Court cannot discern how the ALJ considered the "supportability" of the medical record evidence suggesting that Dr. Tanious' medical opinion was accurate. Likewise, the ALJ failed to provide any detail whatsoever about how Dr. Tanious medical opinion was *wholly* inconsistent with the entire record. *Id.*, at 28. Indeed, since the ALJ's RFC shares some similarities to Dr. Tanious' medical opinion, it is unclear how Dr. Tanious' medical opinion can also lack any consistency with the record as whole. *Compare id.*, at 25, *with id.*, at 459–61. Stated differently,

significant gaps exist in the ALJ's discussion of Dr. Tanious' medical opinion that leave this Court unable to build a "logic bridge" between the evidence and his finding. *See*, *e.g.*, *Hardy v. Comm'r of Soc. Sec.*, No. 20–10918, 2021 WL 3702170, at *5 (E.D. Mich. Aug. 13, 2021) (quoting *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20–CV–495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021)) ("[W]here th[e] [ALJ's] summary included both supportive and contradictory information, [the summary alone] does little to explain the ALJ's reasoning or to 'provide sufficient rationale for a reviewing adjudicator or court.'"). By extent, the Court cannot meaningfully review whether his finding is supported by substantial evidence. *Pearson*, 2021 WL 3708047, at *5–*6. Indeed, the Commissioner does not attempt to fill in the ALJ's gaps. *See* Doc. [16], at 9. To be sure, the Court does not dispute that medical record evidence exists that may have played a role in the ALJ's determination that Dr. Tanious' medical opinion was unpersuasive. *Pearson*, 2021 WL 3708047, at *7. However, this Court cannot build a logic bridge based on pure speculation and *post hoc* rationalizations. *See*, *e.g.*, *Ramirez*, 2021 WL 2269473, at *6 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). *See also Hardy*, 2021 WL 3702170, at *5. Since the ALJ's discussion is insufficient to meet the demands of 20 C.F.R. § 404.1520c(b)(2) insofar as the Court cannot undertake meaningful review of his finding, the ALJ committed legal error.

    Finally, the Court turns to the question of whether the ALJ's error was harmless. It is well-established that "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). Here, the ALJ's legal error was not harmless. First, Dr. Tanious' medical opinion was far from peripheral or merely cumulative of other medical records. *Pearson*, 2021 WL 3708047, at *7. Dr. Tanious was one of

Cooley's treating physicians and the only one to provide a medical opinion. 20 C.F.R. § 404.1520c(c). Furthermore, Dr. Tanious put forth the only medical opinion concluding that Cooley suffered from limitations that, the VE concluded, are consistent with a finding of disability. Doc. [9], at 131–32, 459–61. The ALJ's legal error prevents this Court from determining whether substantial evidence supported his decision. *Pearson*, 2021 WL 3708047, at *7. The legal error clearly implicates Cooley's substantive rights. *Audler*, 501 F.3d at 448. For these reasons, remand is required.[2]

## VIII.   Conclusion

**IT IS THEREFORE ORDERED AND ADJUDGED** that this case is **REMANDED** to the Commissioner of Social Security for further proceedings consistent with this opinion. This Court will enter a separate final judgment pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 15th day of September 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] Since remand is appropriate, the Court does not reach the remainder of Cooley's arguments. *See*, *e.g.*, *Pearson*, 2021 WL 3708047, at *7 n.7 (collecting cases).